**Virgil A. McCORMACK and Sandra McCormack, Respondents,**

v.

**CAPITAL ELECTRIC CONSTRUCTION COMPANY, INC., Appellant.**

**No. WD 57688.**

Missouri Court of Appeals, Western District.

Nov. 7, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 2000.

Application for Transfer Denied Feb. 13, 2001.

Jana Von Richards, Kansas City, for
appellant.

Richard P. Scaletty, Independence, for respondents.

Before EDWIN H. SMITH, Presiding Judge, ULRICH, Judge and ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

On December 13, 1995, Respondent Virgil McCormack was performing sheet rock carpentry for Carmen Schell, a subcontractor on a building project for Marion Merrill Dow. While installing a firewall from scaffolding, Mr. McCormack came into contact with the uncapped end of a live electrical wire and received an electrical shock. Mr. McCormack was injured as a result.

Subsequently, Mr. McCormack filed a negligence action against Appellant Capital Electric Construction Company ("Capital Electric"), the subcontractor responsible for the electrical work on the project. Mr. McCormack's wife, Sandra, also filed a claim for loss of consortium.

After 2 ½ weeks of trial, the jury assessed damages at $256,000 on Mr. McCormack's claim, but assigned 92% of the fault to Mr. McCormack and 8% of the fault to Capital Electric. The jury entered a verdict against Sandra McCormack on her consortium claim.

Subsequently, the McCormacks filed a motion for new trial asserting that the judgment was against the weight of the evidence. A hearing was conducted on that motion on September 2, 1999. During that hearing on Plaintiffs' motion for new trial, the trial court made the following comments:

> Candidly, from the evidence that I found, I thought there was substantial evidence of negligence, but there was [sic] some very significant issues as relates to the issue of damage.

> I submitted comparative fault in this case, and I submitted it, candidly, as I recall, without even objection from the plaintiff. I believe an argument can be made as to whether this even was a comparative fault case, but I submitted it, and I stand by that submission; however, the following occurred and this is the basis for my concern.

> * * *

> And when I got the jury verdict, I noticed that what they had done was they had their comparative fault submission, if memory serves me, was 92 percent at fault for Mr. McCormack and 8 percent at fault for the Defendant and a Defendant's verdict as relates to Sandra McCormack.

> That in and of itself troubled me a great deal because of the fact that it was an emotional case.... I went up to thank the jury for their services and, to make a long story short, it was not an inquiry that I instituted, but they immediately made an inquiry as to what this verdict meant.

> It was clear to me, from their inquiry, consistent with the questions they asked during jury deliberation, that the verdict which, in essence was for $256,000 with a 9% split, which would come out to roughly something slightly less than $20,000, it was clear that the jury thought that the award they gave was the award that was going to be received by the Plaintiff.

> They asked me specifically about it. I did not generate the inquiry. Everyone in the room clearly thought that they misread the instructions from the colloquy that I had.

> * * *

> I informed counsel of these events and suggested they brief the issue and told them that, mainly because of the fact of the contributory fault submission, that I felt that or the contributory fault attribution by the jury that I just thought was not supported by the evidence, and then I add this very unusual situation with the jury circumstance, I felt that I

needed to give very serious consideration to granting a new trial on the basis of the verdicts being against the weight of the evidence.

\* \* \*

I think I should just set the whole thing aside, candidly, as to both Plaintiffs based on the situation that's before me. I don't know any way that I can allow the damages to stand if my basis for setting aside the new trial motion [sic] is that I thought the attribution of fault was against the weight of the evidence. If I'm wrong, you're welcome to enlighten me.

\* \* \*

I agree that there is certainly a body of law that suggests a jury cannot impeach its verdict, and my ruling will not be based on the conduct [sic] I had with the jury other than it's such an abnormal contact. I just feel we would be playing games if I didn't put on the record as to what happened, and I think everyone will agree that I let you all know of this circumstance.

\* \* \*

Based on the posture of the case as I see it and the finding of liability and damages as relates to Virgil McCormack is against the weight of the evidence. It is my intention to grant a new trial as relates to both those issues.

May I say, had it been 9% the other way and they assessed the damages, I wouldn't have thought about setting it aside. And candidly, if it had been 9% and less damages, I wouldn't have given a thought of setting it aside.

But under the facts that I heard, I think to attribute 92 percent fault against Mr. McCormack as relates to this circumstance is just clearly beyond the weight of the evidence and just simply not reasonable.

I also believe there was compelling evidence that the circumstances that he has suffered had a tremendous impact upon Mrs. McCormack, and for that same reason, and on the basis of the record, I'm going to set aside the verdict in favor of the Defendant against Mrs. McCormack grant [sic] a new trial based on the weight of the evidences as relates to that factor also.

\* \* \*

There will be an order entered here today basically reciting based upon the hearing and the record I made today, that I do grant a motion for new trial to both Virgil McCormack and Sandra McCormack finding that the verdicts rendered by the jury were against the weight of the evidence.

On September 10, 1999, the trial court entered its Judgment and Order sustaining Plaintiff's motion for new trial. The court found that "the Jury's Verdict is against the weight of the evidence as to both Plaintiffs." The Court then incorporated by reference the record of the motion hearing.

Capital Electric raises three points on appeal. In its first point, Capital Electric claims that the trial court abused its discretion in granting a new trial because the court relied on inadmissible juror statements about the jury's deliberations.

In accordance with Rule 78.02, the trial court has broad discretionary power to grant a new trial on the grounds that the verdict was against the weight of the evidence. *Brown v. Lanrich, Inc.,* 950 S.W.2d 235, 237 (Mo.App. E.D.1997). An order granting a new trial on the ground that the verdict is against the weight of the evidence is presumed to be correct, and that order will not be disturbed unless the trial court manifestly abused its discretion in granting that motion. *McGraw v. Andes,* 978 S.W.2d 794, 801 (Mo.App. W.D. 1998). "Judicial discretion is abused when the trial court's ruling is clearly against

the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Anglim v. Missouri Pacific R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992). "As long as [a] plaintiff makes a submissible case, the court's grant of a motion for new trial on this ground is virtually unfettered." *Brown*, 950 S.W.2d at 237. "We indulge every reasonable inference in favor of the trial court's ruling," and "[n]o abuse of discretion will be found where substantial evidence exists to support a verdict in the moving party's favor." *McGraw*, 978 S.W.2d at 802.

■ In its brief, Capital Electric concedes that the McCormacks presented sufficient evidence at trial to submit their case to the jury. However, Capital Electric asserts that the normal standard of review should not be applied to this case because the trial court in granting the new trial relied on inadmissible *ex parte* communications with jurors in which they impeached their verdict. Capital Electric claims that the trial court's comments immediately after the jury returned its verdict that the case had been "well-tried" and that "the jury has spoken," along with the comments made by the trial court during the motion hearing, demonstrate that the trial court clearly allowed its contact with the jurors to influence its decision.

■ "It is a 'well-founded and long-established rule, based on sound public policy, ... that the affidavit or testimony of a juror is inadmissible and is not to be received in evidence for the purpose of impeaching the verdict of a jury.'" *Wingate by Carlisle v. Lester E. Cox Medical Center*, 853 S.W.2d 912, 916 (Mo. banc 1993) (*quoting Smugala v. Campana*, 404 S.W.2d 713, 717 (Mo.1966)). "No one is competent to impeach a verdict ... as to matters inherent in the verdict, such as that the juror did not understand the law as contained in the court's instructions, or that he voted a certain way due to a misconception of the evidence, or misun-

derstood the statements of a witness, or other matters 'resting alone in the juror's breast.'" *Maxam v. Dillon*, 674 S.W.2d 258, 260 (Mo.App. E.D.1984) (quoting *Baumle v. Smith*, 420 S.W.2d 341, 348 (Mo.1967)).

Based on some of the comments made by the trial court, Capital Electric asks this Court to infer that the trial court based its decision on its contact with the jury. But in determining whether the trial court abused its discretion, we must indulge every reasonable inference in favor of the trial court's ruling. *McGraw*, 978 S.W.2d at 802. In rendering his decision to grant a new trial, the trial judge clearly stated that he was granting a new trial based on the fact that the verdict was against the weight of the evidence. The judge said that he had concerns about the verdict prior to having any contact with the jurors. The judge acknowledged the body of law preventing jurors from impeaching their own verdict and stated that he was not relying on comments made to the court by the jurors in rendering his decision to grant a new trial. Accordingly, we must infer that the judge did not allow his contact with the jurors to enter into his decision to grant a new trial.

■ Furthermore, "[a] trial court's ruling on a motion for new trial is not required to set forth its reasons for the conclusion reached or the mental process by which the determination was made, ... and in those cases when it does, its efforts should be considered as no more than an attempt to explain the order to the parties and their attorneys." *Giddens v. Kansas City Southern Ry. Co.*, 937 S.W.2d 300, 307 (Mo.App. W.D.1996). "Even when a trial court gives 'obscure, incorrect or erroneous reasons for its order granting a new trial on the ground that the verdict was against the weight of the evidence, the decision is conclusively presumed to have been made on that ground.'" *Niccoli v. Thompson*, 713 S.W.2d 579, 581 (Mo.App. W.D.1986) (citing *Burr v. Singh*, 362 Mo.

692, 243 S.W.2d 295, 300 (1951) and *Resco Const. Co. v. Dawson Cabinet Co.,* 656 S.W.2d 324, 327 (Mo.App. S.D.1983)). In the case at bar, the Appellant's have conceded, and the record reflects, that the McCormacks presented sufficient evidence to submit their case to the jury. "[A]s there was substantial evidence that would have supported verdicts for [the Respondents] on all issues, it is axiomatic that the trial court did not abuse its discretion in ordering the new trial." *Resco Const. Co,* 656 S.W.2d at 327; *McGraw,* 978 S.W.2d at 802.

■ We conclude our discussion of this point with the observation that a fair reading of the trial court's comments are indicative of a judge trying very hard to be fair, open and candid by making full disclosure on the record of the events that occurred, but then making it clear that he was not granting a new trial on the basis of his contact with the jurors. It was entirely honorable and appropriate for the judge to disclose to counsel the inquiries made by the jurors and his impression of their confusion about their verdict. To not have done so might well have been inappropriate judicial conduct and would most certainly have resulted in, and lent credence to, the contention here made that his decision was influenced by the juror contact. The trial judge is to be commended for his candor and complimented for his judicious handling of unusual events and circumstances.

For the foregoing reasons, we cannot find that the trial court abused its discretion, much less manifestly abused that discretion, in granting Respondents a new trial. Point denied.

■ In its second point, Capital Electric asserts that the trial court erred in granting a new trial on damages as well as the allocation of fault because the court mistakenly believed that it could not grant a new trial solely on the fault issue. Capital Electric bases its claims on the trial court's comment: "I don't know any way

that I can allow the damages to stand if my basis for setting aside the new trial motion [sic] is that I thought the attribution of fault was against the weight of the evidence." Capital Electric also relies on statements made by the court that it would have upheld the verdict if the assessment of fault had been different. Based on these comments, Capital Electric states that the trial court erred as a matter of law in finding a new trial should be granted on the issue of damages.

As noted, *supra,* the trial court's order granting a new trial on the ground that the verdict is against the weight of the evidence will not be disturbed unless the trial court manifestly abused its discretion in granting that motion. *McGraw,* 978 S.W.2d at 801. "We indulge every reasonable inference in favor of the trial court's ruling," and "[n]o abuse of discretion will be found where substantial evidence exists to support a verdict in the moving party's favor." *Id.* at 802.

■ Clearly, the trial court could have ordered a new trial solely on the issue of liability and allowed the damages determination to stand. *Brown v. Lanrich,* 950 S.W.2d 235, 237 (Mo.App. E.D. 1997) (citing *Rule 78.01* ). "The trial court can grant a new trial on all or part of the issues." *Id.* But here the trial court specifically found that a new trial should be granted on the issues of both liability and damages on the basis that the verdict was against the weight of the evidence. As stated in *Courtney v. City of Kansas City,* 775 S.W.2d 269, 273 (Mo.App. W.D.1989):

Where there is conflicting evidence on liability, a new trial on all issues is desirable. *Phillips v. Lively,* 708 S.W.2d 369, 373 (Mo.App.1986). It has been held that in comparative fault cases there is an interrelationship between fault and damages apparent on the face of the instructions. *Id.* The issues of liability and damages are so interwoven and blended that "it would be a rare case in which a jury would not consider the effect of its determination of percent-

ages of fault in terms of damages to be eventually awarded to the plaintiff." *Id.* Since the plaintiff presented sufficient evidence to support a higher verdict, the trial court acted within its discretion in granting a new trial on both damages and liability. *McGraw*, 978 S.W.2d at 802. Point denied.

In its final point, Capital Electric asks this Court to review the trial court's decision to exclude evidence of the McCormacks' financial difficulties on the grounds that its prejudicial effect outweighed its probative value. While acknowledging that the proffered evidence would have been prejudicial, Capital Electric asserts that evidence of the McCormacks' bankruptcy, their failure to file income tax returns, and problems they had with the IRS was necessary to support its malingering defense and to establish the McCormacks' motivation of financial gain. Capital Electric claims that evidence of the McCormacks' personal and economic background was necessary to establish that Mr. McCormack fit the profile of an individual who would malinger for financial gain.

In response, the McCormacks claim that the issue was not properly preserved for appeal through an adequate offer of proof [1] or a motion for new trial. Even assuming, *arguendo,* that the issue is properly preserved for appeal and that it is likely to arise again when the case is retried, we cannot find that the court erred in excluding the proffered evidence.

Appellate review of the admission or exclusion of evidence by the trial court is limited to determining whether the trial court abused its discretion in rendering its decision. *Still v. Ahnemann,* 984 S.W.2d 568, 572 (Mo.App. W.D.1999). "The issue is not whether the evidence was admissible, but rather whether the trial court abused its discretion in excluding it." *Phillips v. American Motorist Ins. Co.,* 996 S.W.2d 584, 587 (Mo.App. W.D.1999).

"Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful deliberate consideration." *Willman v. Wall,* 13 S.W.3d 694, 697 (Mo.App. W.D.2000) (citing *Newman v. Ford Motor Co.,* 975 S.W.2d 147, 151 (Mo. banc 1998)). "We will find no abuse of discretion in excluding evidence unless the materiality and probative value of the evidence were sufficiently clear, and the risk of confusion and prejudice so minimal, that we could say that it was an abuse of discretion to exclude it." *Still,* 984 S.W.2d at 572.

Evidence of a plaintiff's poverty or comments related thereto are generally condemned. *Cole ex rel. Cole v. Warren County R III School Dist.,* 23 S.W.3d 756, 756 (Mo.App.E.D.2000) (citing *Firestone v. Crown Center Redevelopment Corp.,* 693 S.W.2d 99, 105 (Mo.1985)). In this instance, even Capital Electric has acknowledged that the proffered evidence was prejudicial. While it may have been within the trial court's discretion to admit the evidence offered by Capital Electric, the trial court certainly did not abuse its discretion in determining that the prejudicial effect of this evidence outweighed its probative value and in excluding it at trial. Point denied.

The judgment of the trial court is affirmed.

All concur.

---

1. "Our review of an exclusion of evidence issue depends upon an offer of proof demonstrating relevance and admissibility to the tri-al court. Such offer must be definite and specific." *Loitman v. Wheelock,* 980 S.W.2d 140, 141–42 (Mo.App. E.D.1998).